IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00945-WDM-CBS

ABU-LATIF K. ABU-NANTAMBU-EL,
        Plaintiff,
v.

DIRECTOR DENVER SHERIFF's DEPT. BILL LOVINGIER, et al.,
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        The matters before the court are as follows:

1.      Plaintiff's "Petition for Immediate Injunctive Relief and Request for

        Temporary Restraining Order Pursuant to FED. R. CIV. P. 65 and 28

        U.S.C. § 2283" [doc. #  4], filed May 19, 2006;

2.      Plaintiff's "Petition for Immediate Injunctive Relief and Request for

        Temporary Restraining Order Pursuant to FED. R. CIV. P. 65 and 28

        U.S.C. § 2283" [doc. # 41], filed August 14, 2006.

Pursuant to the Order of Reference [doc. # 14], filed June 29, 2006, and the

memoranda [doc. # 39], dated August 8, 2006, and [doc. # 42], dated August 14, 2006,

Plaintiff's Petitions were referred to the Magistrate Judge.  The court has reviewed the

Petitions, the exhibits, the entire case file, and the applicable law and is sufficiently

advised in the premises.

1

I.     **Background.**

This is a prison inmate civil rights case alleging claims under **42 U.S.C. § 1983, 42 U.S.C § 1985(3), 42 U.S.C. § 1986, 42 U.S.C. § 2000cc,** and **42 U.S.C. § 1997(d)**. Plaintiff Abu-Latif K. Abu-Nantambu-el ("Plaintiff") is a convicted felon formerly incarcerated at the Denver County Jail.  Plaintiff's Amended Prisoner Complaint ("Amended Complaint") alleges violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights.  Plaintiff's claims relate to the conditions of his confinement and the seizure of his personal belongings, specifically alleging denial of his freedom to engage in his religious practices, physical abuse, malicious conduct, retaliatory actions, and excessive force.  *(Amd. Compl., pp. 9-10).*  Plaintiff names as defendants several officials and officers employed by the Denver Sheriff's Department, as well as Mary Malatesta ("Defendant Malatesta"), who is not employed by Denver Sheriff's Department, but rather is an investigator at the Denver Office of the Independent Monitor ("OIM").

Plaintiff, who was incarcerated when he filed his Petition, seeks the following injunctive relief:

1.     "to provide the Plaintiff a proper islamically lawful 'Halal' diet as is required  . . . for Muslim individuals . . . or in the alternative, provide the Plaintiff with a 'Kosher' diet because otherwise Plaintiff will be forced to starve or eat in violation of his Islamic religious principles;"

2.     "to return any and all legal papers, materials, books, legal documents (sic)  that have recently been confiscated from the Plaintiff on (3)

2

separate occasions. . . [and order Defendants] to halt these practices;"

3.      "to return any and all religious Islamic items, Koufl, books, pamplets (sic), prayer guides, literature, and Holy Qurans (sic) and study guides, lessons and other Islamic religious materials that have recently been confiscated from the Plaintiff on (3) separate occasions, in retaliatory action by the Defendants and order them to stop this unlawful practice(s);"

4.      "to allow the Plaintiff to go to and use the facility law library and allow him to use computer, resource/research books, typewriter and make photocopies of pleadings and motions, other legal documents and lift the present 'ban' on him from the law library;"

5.      "to afford the Plaintiff all the same protections, guidelines and policies and procedures with reguards (sic) to disciplinary write ups and conduct adjustment hearings, sentencing, reclassification to segregation and treatment, that Defendants afford all other inmates and non-Muslims and stop the practice(s) of initiating disciplinary reports on Plaintiff based on ficticious (sic), dubious and spurious grounds and denying Plaintiff any semblance of due process at hearings and subsequent placements in punative (sic) segregation." *(Petition, pp. 3-5).*

Alternatively, Plaintiff seeks a preliminary injunction.


## II.      Standard of Review.

First, *pro se* pleadings are to be construed liberally. ***Haines v. Kerner,*** 404 U.S.

519, 520-21 (1972).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." ***Hall v. Bellmon****,* 935 F.2d 1106, 1110 (10th Cir. 1991).

Second, a temporary restraining order may be granted only if "it clearly appears from specific facts shown by affidavit or by the verified complaint[1] that immediate and irreparable injury, loss or damage will result to the applicant." **FED. R. CIV. P.  65(b)**. Furthermore, to be entitled to temporary or preliminary injunctive relief, a moving party must establish: (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant unless injunctive relief is provided; (3) the threatened injury to the movant outweighs the injury that the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. ***Kikumura v. Hurley,*** 242 F.3d 950, 955 (10th Cir. 2001).

## III.    Analysis.

### A.    Mootness.

After filing his motions for injunctive relief, Plaintiff was released on September 2,

---

[1] Plaintiff's Amended Complaint is a verified complaint.  "Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)." ***Conaway v. Smith****,* 853 F.2d 789, 792 (10th Cir.1988); ***See also Lantec, Inc. v. Novell, Inc.****,* 306 F.3d 1003, 1019 (10th Cir. 2002).  To the extent that a verified complaint is based on personal knowledge, contains facts which would be admissible at trial, and shows that the affiant is competent to testify on the matters stated therein, it meets these requirements. ***Id.***

2006.  Before examining the merits of Plaintiff's request, the court must consider
whether Plaintiff's Petition is moot in light of his release.   On December 12, 2006, the
court issued an Order to Show Cause [doc. # 61], directing Plaintiff to explain why his
Petition for injunctive relief is not moot by his September 2, 2006, release.  Plaintiff's
response was due on January 2, 2007.  *(Order dated Dec. 13, 2006* **[doc. # 61]***).*
Plaintiff has not filed a response to the court's Order to Show Cause.

 "Mootness is a threshold issue because the existence of a live case or
controversy is a constitutional prerequisite to federal court jurisdiction." ***Out of Line
Sports, Inc. v. Rollerblade, Inc.,*** 213 F.3d 500, 501 (10th Cir. 2000) (quoting
***McClendon v. City of Albuquerque***, 100 F.3d 863, 867 (10th Cir. 1996)).  "Article III's
requirement that federal courts adjudicate only cases and controversies necessitates
that courts decline to exercise jurisdiction where the award of any requested relief would
be moot – *i.e.*, where the controversy is no longer live and ongoing . . . .  a 'plaintiff
cannot maintain a[n] ⋯ injunctive action unless he or she can demonstrate a good
chance of being likewise injured [by the defendant] in the future.' " ***Cox v. Phelps
Dodge Corp.,*** 43 F.3d 1345, 1348 (10th Cir. 1994), *superceded by statute on other
grounds as stated in* ***Walker v. United Parcel Serv., Inc.,*** 240 F.3d 1268, 1278 (10th
Cir. 2001) (quoting ***Facio v. Jones***, 929 F.2d 541, 544 (10th Cir. 1991)).

 As applied to this case, the mootness doctrine renders nonjusticiable Plaintiff's
request for a temporary restraining order/preliminary injunction relating to the conditions
of his confinement and the request to have his personal belongings returned.  The court
lacks the power to issue the requested relief because Plaintiff has already been

released from prison.  *See Green v. Branson,* 108 F.3d 1296, 1300 (10th Cir. 1997)

(finding plaintiff's request for prospective injunctive relief moot because he "is no longer

a prisoner within the control of the ODC, [and] the entry of a declaratory judgment in

[plaintiff's] favor would amount to nothing more than a declaration that he was wronged,

and would have no effect on the defendants' behavior towards him").  Therefore,

Plaintiff's "Petition for Immediate Injunctive Relief and Request for Temporary

Restraining Order Pursuant to **FED. R. CIV. P. 65** and **28 U.S.C. § 2283**" is properly

denied as moot.


      **B.**     **FED. R. CIV. P. 65(a) & (b).**

      Alternatively, Plaintiff's Petitions are properly denied because Plaintiff fails to

make the requisite showings under **FED. R. CIV. P. 65**.  **FED. R. CIV. P.  65(a) & (b)**

govern preliminary injunctions and temporary restraining orders, respectively.  "Where

the opposing party has notice, the procedure and standards for issuance of a temporary

restraining order mirror those for a preliminary injunction."  *Emmis Comm'ns Corp. v.

Media Strategies, Inc.,* 2001 WL 111229, *2 (D. Colo. 2001) (citing **11A Charles Alan

Wright, Arthur Miller & Mary Kay Kane,** *Federal Practice and Procedure,*  § 2951 (2d

ed.1995)); *see also Sampson v. Murray,* 415 U.S. 61, 86 (1974).  Because Plaintiff

seeks a temporary restraining order and gave notice to Defendants, his motion is

analyzed under preliminary injunction standards.

      A preliminary injunction is an extraordinary remedy and should only be granted

when the moving party clearly and unequivocally establishes its necessity. *See United*

*States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt.*

*Consultants, Inc.,* 883 F.2d 886, 888-89 (10th Cir. 1989).  In the Tenth Circuit, a party

seeking a preliminary injunction must establish four prerequisites:  (1) [he or she] will

suffer irreparable injury unless the injunction issues; (2) the threatened injury . . .

outweighs whatever damage the proposed injunction may cause the opposing party; (3)

the injunction, if issued, would not be adverse to the public interest; and (4) there is a

substantial likelihood [of success] on the merits.  *Schrier v. Univ. of Colo.,* 427 F.3d

1253, 1258 (10th Cir.2005) (citations omitted).

   For some requested preliminary injunctions a movant has an "even heavier

burden of showing that the four factors listed above weigh heavily and compellingly in

movant's favor before such an injunction may be issued."  *SCFC ILC, Inc. v. Visa USA,*

*Inc.,* 936 F.2d 1096, 1098 (10th Cir.1991)  The heightened burden applies to preliminary

injunctions that (1) disturb the status quo, (2) are mandatory as opposed to prohibitory,

or (3) provide the movant substantially all the relief he may recover after a full trial on

the merits[2].  *See id.* at 1098-99; *O Centro Espirita Beneficiente Uniao Do Vegetal v.*

*Ashcroft,* 389 F.3d 973, 977 (10th Cir. 2004) (en banc) [hereinafter *O Centro* ] ).

   If a preliminary injunction fits within one of these disfavored categories, the

injunction "must be more closely scrutinized to assure that the exigencies of the case

support the granting of a remedy that is extraordinary even in the normal course."

*Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1259 (10th Cir.2005) (citing *O Centro,* 389

---

   [2] In his Amended Complaint, Plaintiff seeks monetary relief in addition to
injunctive relief.

7

F.3d at 975-96).  Furthermore, because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard.  *O Centro,* 389 F.3d at 975-96.  Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on a modified likelihood-of-success-on-the-merits standard.  *Id.  See Schrier* , 427 F.3d at 1261 ("the requirement that a movant requesting a disfavored injunction must make a showing that the traditional four factors weigh heavily and compellingly in his favor is no longer the law of the circuit.").

Mandatory injunctions "affirmatively require the nonmovant to act in a particular way."  *Id.*  An injunction is mandatory if the requested relief "affirmatively require[s] the nonmovant to act in a particular way, and as a result ⋯ place [s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction."  *O Centro*, 389 F.3d at 979.  Plaintiff's requested relief "affirmatively require[s] the [Defendants] to act in a particular way," *id.,* that is, to provide him a particular diet, to lift a ban on his access to the law library, and to administer disciplinary procedures fairly and with due process of law.  *(Petition, pp. 4-5).*  Granting Plaintiff's requested relief would place the court in position where it may have to provide supervision if Plaintiff were to return to prison.  Thus, the relief sought here is properly characterized as mandatory and, as a result, constitutes a specifically disfavored injunction.  *Schrier,* 427 F.3d at 1261.

Status quo is defined as "the last uncontested status between the parties which preceded the controversy. . . . " *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.,* 269 F.3d 1149, 1155 (10th Cir. 2001) (citation omitted). "The status quo is not defined by the parties' existing *legal rights;* it is defined by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationship may ultimately be found to be in accord or not in accord with the parties' legal rights." *Schrier,* 427 F.3d at 1259 (emphasis in the original) (citations omitted).

Here, Plaintiff seeks to change his diet, to have his legal papers/materials returned, to have his religious items returned, to have access to the law library, and to have prison disciplinary proceedings administered fairly and with due process of law. Granting Plaintiff's requested would relief would change the relationship between Plaintiff and the Defendants as it last existed– that is, before he was released from prison.  It is, therefore, a disfavored injunction and must be more closely scrutinized. *Martinez v. Ortiz,* 2006 WL 771326, *2 -3 (D. Colo. 2006) (Daniel, J.) (finding that Plaintiff's request for preliminary injunction would alter the status quo because the injunction would transform the parties relationship as it existed at the time the request was sought).

### i.      Substantial Likelihood of Success on the Merits of the Case.

Because Plaintiff's requests would alter the status quo, and are disfavored,

Plaintiff "must make a strong showing. . . with regard to the likelihood of success on the merits . . .  and may not rely on [a less stringent] modified likelihood-of-success-on-the-merits standard." *Schrier*, 427 F.3d at 1261; *see also Martinez,* 2006 WL 771326, *3. Plaintiff has failed to satisfy this prerequisite for issuing a preliminary injunction because he has not established why he would likely succeed on the merits.

> ### a.    Exhaustion.

Plaintiff claims that he has a right to a diet conforming to his religious beliefs; that Defendants' ban on Plaintiff's access to the law library violates his constitutional rights; that Defendants' denial of his law books and Islamic books and papers violates his constitutional rights; and that Defendants' ban on his access to the law library has unconstitutionally denied any meaningful access to the courts. *(Pet. for Immediate. Inj. Relief, pp. 6-9).* As with any action brought under § 1983 with respect to prison conditions, Plaintiff must demonstrate that he exhausted all administrative remedies available prior to seeking additional relief.  The Prison Litigation Reform Act states that "[n]o action shall be brought with respect to prison conditions under section 1983. . . or any other Federal law, by a prisoner . . .  until such administrative remedies as are available are exhausted." **42 U.S.C. § 1997e(a)**.  A litigant's failure to raise issues during an administrative appeal can constitute a failure to exhaust administrative remedies. *See Rivera-Zurita v. INS*, 946 F.2d 118, 120 n. 2 (10th Cir.1991); *Kikumura v. Hurley* 242 F.3d 950, 956 (10th Cir. 2001).

The exhaustion provisions of **42 U.S.C. § 1997e(a)** are not jurisdictional.  An inmate must plead exhaustion in his complaint.  **Steele v. Fed. Bureau of Prisons**, 355 F.3d 1204, 1210-11 (10th Cir. 2003), *cert. denied*, 543 U.S. 925 (2004).  He "must provide a comprehensible statement of his claim and also either attach copies of administrative proceedings or describe their disposition with specificity." ***Id.*** at 1211.  An inmate cannot satisfy the PLRA's exhaustion requirement with a blanket statement that he has exhausted his remedies.  ***Id.***  Further, when multiple claims are present in a single lawsuit, the PLRA requires that all available remedies be exhausted as to all claims, or the complaint must be dismissed.  **Ross v. County of Bernalillo**, 365 F.3d 1181, 1188-89 (adopting the "total exhaustion" rule).  "In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under § 1997e." **Steele,** 355 F.3d at 1210.

Attached to the Plaintiff's initial Complaint[3] are various grievances Plaintiff filed during his incarceration from November 30, 2004, until his release on September 2, 2006.  All of the grievances concern the conditions of Plaintiff's confinement[4] at the

---

[3]  Plaintiff fails to attach copies of his grievance form to his Amended Complaint.

[4]  Plaintiff did attach various grievance forms to his initial Complaint.  Grievance numbers 55195 and 55197 addresses Plaintiff's inability to pray in accordance with his religious beliefs.  Grievance number 55165 addresses Plaintiff's request to have his religious items returned to him.  Grievance number 55186 addresses Plaintiff's desire to participate in Ramadan and to be given special meals.  Grievance number 55196 addresses the alleged confiscation of Plaintiff's legal and religious mail.  Grievance number 65207 addresses an alleged conspiracy by Defendant Schaefer and other deputies and supervisors to "hinder and obstruct [Plaintiff] and other Muslims from the

Denver County Jail.   However, on June 5, 2006, Plaintiff filed his Amended Complaint, in which Plaintiff claimed that he exhausted his administrative remedies with respect to his claims.   He stated: "I have extensively exhausted all grievance and administrative remedies including contacting the U.S. Department of Justice, Civil Rights Division, re: Doc. No. doc. #  240792 (copies attached) and the Office of Independent Monitor." *(Amd. Compl., p. 7)*.   Yet, Plaintiff failed to attach to the Amended Complaint copies of the grievance forms or describe with sufficient detail how he exhausted each of his claims and the disposition of those grievances.

"It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Davis v. TXO Production, Corp.,* 929 F.2d 1515, 1516 (10th Cir. 1991) (quoting *6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure,* para. 1476, at 556-57 (2d. ed. 1990)).   Thus, the operative complaint here is Plaintiff's Amended Complaint, which is devoid of a detailed description of the administrative remedies Plaintiff pursued and their disposition.   To satisfy the burden of pleading exhaustion of administrative remedies, Plaintiff must either attach copies of administrative proceedings or describe their disposition with specificity.   *Steele v. Federal Bureau of Prisons,* 355 F.3d 1204, 1211 (10th Cir. 2003).   Plaintiff's Amended Complaint neither describes with specificity the grievance procedures Plaintiff followed nor does it include attachments of documentation demonstrating exhaustion.   Because

---

observance of our religious practices and requirements through retaliation, retribution and humiliation" and "to include harassment, threats and punishments, without due process, as a result of charges spurious in nature. . . ."

he has failed to demonstrate exhaustion, Plaintiff cannot establish a likelihood of success on the merits.

Assuming *arguendo* that Plaintiff's original Complaint has any continuing legal effect, Plaintiff has still failed to demonstrate complete exhaustion of his claims. A review of the grievance forms attached to the Complaint reveals that Plaintiff failed to present his issues to the jail commander, to the Division Chief, and to the Director of Corrections. Only two grievances (numbered 55195 and 65207) describe any response to Plaintiff's grievances and neither demonstrate total exhaustion of his administrative remedies as to all of his claims. *See Ross v. County of Bernalillo,* 365 F.3d 1181, 1190 (10th Cir. 2004) (requiring total exhaustion of claims).

The Tenth Circuit has adopted the concept of total exhaustion in connection with the Prison Litigation Reform Act (PLRA) exhaustion requirement. With regard to this concept, the Court stated as follows:

> In the PLRA context, a total exhaustion rule would encourage prisoners to make full use of inmate grievance procedures and thus give prison officials the first opportunity to resolve prisoner complaints. It would facilitate the creation of an administrative record that would ultimately assist federal courts in addressing the prisoner's claims. Moreover, it would relieve district courts of the duty to determine whether certain exhausted claims are severable from other unexhausted claims that they are required to dismiss. Prisoners suing under § 1983, no less than habeas petitioners, can be expected to adhere to this straightforward exhaustion requirement. Finally, the total exhaustion rule will not increase the burden on federal courts, but will instead tend to avoid at least some piecemeal litigation. *Ross v. County of Bernalillo*, 365 F.3d 1181, 1190 (10th Cir.2004).

Thus, the court held that an action containing both exhausted and unexhausted

13

claims is subject to dismissal: "[w]e agree that the PLRA contains a total exhaustion requirement, and hold that the presence of unexhausted claims in [the plaintiff's] complaint required the district court to dismiss his action in its entirety without prejudice." *Ross,* 365 F.3d at 1189.  Recently, the Tenth Circuit has again addressed the total exhaustion requirement, finding a limited exception to the total exhaustion rule. *Kikumura v. Osagie,* 461 F.3d 1269,1290 (10th Cir.2006).  "[T]he total exhaustion rule does not require dismissal of the entire action where, subsequent to the filing of the lawsuit, the prison grievance system has issued a final denial of any unexhausted claims on procedural grounds." *Kikumura,* 461 F.3d at 1288.  "Where the plaintiff submits the unexhausted claim to the prison grievance system after filing suit, and the prison issues a final rejection of that claim for untimeliness, [the policy considerations underlying the total exhaustion rule] are inapposite." *Kikumura,* 461 F.3d at 1288.

       In the instant case, it is not clear that the prison was given the opportunity to address Plaintiff's claims that his various constitutional rights were violated.  Thus, the narrow exception to the total exhaustion doctrine established in *Kikumura* does not apply.  The only conclusion that is supported by the information provided by Plaintiff is that he has not exhausted his administrative remedies with regard to all of his claims.  One of the main purposes of exhaustion is to give prison officials the first opportunity to address the prisoner's complaint-thereby potentially eliminating the need for litigation-and to create an administrative record that facilitates review of the prisoner's claim if litigation is ultimately pursued.  *Ross,* 365 F.3d at 1184.  This has not occurred in this case with regard to at least some of Plaintiff's claims.  Accordingly, Plaintiff's

14

allegations and his supporting documentation are insufficient to satisfy his burden of showing total exhaustion of administrative remedies.  Even assuming that Plaintiff's original Complaint has any viability, Plaintiff has still failed to demonstrate total exhaustion of his administrative remedies, and, therefore, a likelihood of success on the merits.

### ii.     Irreparable Harm to Plaintiff.

Next, Plaintiff must show that he will suffer irreparable injury if his request for a temporary restraining order/preliminary injunction is denied.  There is no indication that Plaintiff will suffer irreparable injury absent an injunction. "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain. *See Tri-State Generation & Transmission Assoc., Inc., v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1354 (10th Cir.1989).  However, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." **11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,** *Federal Practice and Procedure* **§ 2948.1 (2d ed.1995);** *Kikumura v. Hurley,* 242 F.3d 950, 963 (10th Cir. 2001).

Plaintiff claims: "[t]he Plaintiff has been and will continue to be, irreparably injured by the unconstitutional and illegal conduct of the Defendants, unless this court

will issues (sic) it's (sic) order to show case (sic) and grants the injunctive or restraining order relief which Plaintiff now seeks." *(Pet. for Immed. Inj. Relief, p. 9).* Although the record before the court demonstrates no present threat of irreparable harm and Plaintiff has not specifically identified the harm he will suffer if the requested relief is denied, because Plaintiff's constitutional rights are involved, no further showing of irreparable injury is required. *See Knutson v. Daily Review, Inc.,* 401 F. Supp. 1374 (D.C. Cal., 1975) ("Injunctive relief is designed to prevent future wrongs, not to punish past acts."). *But see, Kikumura,* 242 F.3d at 963. Because the relief available to Plaintiff after trial would not adequately compensate him for the alleged violations of his religious rights, Plaintiff has sufficiently demonstrated irreparable harm.

### iii.    Balance of Parties' Interests.

Next, Plaintiff must demonstrate whether "the threatened injury. . . outweighs whatever damage the proposed injunction may cause the opposing party." *Schrier,* 427 F.3d at 1258. The third factor also tips against granting an injunction. In *Turner v. Safley*, 482 U.S. 78 (1987). The Supreme Court cautioned against judicial interference with the daily administration of prisons:

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. *Turner*, 482 U.S. at 84-85.

In this case, Plaintiff has initiated administrative remedies regarding his various claims and it is unclear from the record whether they are complete.  The prison administration should have the first opportunity to respond to these claims regarding these allegations which it should.  *Simon v. Ivins,* 2006 WL 3507085, *11 -12 (W.D. Okla., 2006).  Further, Plaintiff completely fails to address this element in his requested relief.  Given Plaintiff's insufficient allegations with respect to the balance of the parties' interests and the court's inability to discern whether Plaintiff exhausted his claims, Plaintiff has failed to demonstrate this requisite element.

### iv.      Adverse to Public Interest.

Finally, Plaintiff must also show that "the injunction, if issued, would not be adverse to the public interest."  *Schrier,* 427 F.3d at 1258.  Arguably, Plaintiff's requested relief would not be adverse to the public interest.  However, again, Plaintiff fails to address this element in his requested relief.  In sum,  Plaintiff has failed to meet his heightened burden to establish an entitlement to injunctive relief.

Accordingly, **IT IS RECOMMENDED** that:

1.      In light of Plaintiff's subsequent and identical "Petition for Immediate Injunctive Relief and Request for Temporary Restraining Order Pursuant to FED. R. CIV. P. 65 and 28 U.S.C. § 2283" [doc. # 41] (filed August 14, 2006), Plaintiff's "Petition for Immediate Injunctive Relief and Request for Temporary Restraining Order Pursuant to

F ED. R. C IV. P. 65 and 28 U.S.C. § 2283" [doc. # 4] (filed May 19, 2006) be **DENIED as**

**moot**;

2.      Plaintiff's " Petition for Immediate Injunctive Relief and Request for

Temporary Restraining Order Pursuant to F ED. R. C IV. P. 65 and 28 U.S.C. § 2283"

[doc. # 41] (filed August 14, 2006) be **DENIED as moot**;

3.      In the alternative, Plaintiff's Petitions [doc. #  4] (filed May 19, 2006) and

[doc. # 41] (filed August 14, 2006) be **DENIED on the merits**.

**IV.     Advisement to the Parties.**

Within ten days after service of a copy of the Recommendation, any party may

serve and file written objections to the magistrate judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of

Colorado.  **28 U.S.C. § 636(b)(1); F ED. R. C IV. P.  72(b)**;  **In re Griego**, 64 F.3d 580,

583 (10 th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions

of the proposed findings or recommendations to which specific objection is made.  **28**

**U.S.C. § 636(b)(1)**.  A general objection that does not put the district court on notice of

the basis for the objection will not preserve the objection for *de novo* review.  **See In re**

**Griego**, 64 F.3d at 583;  **United States v. One Parcel of Real Property Known As**

*2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  **28 U.S.C. § 636(b)(1)**.

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

19

DATED at Denver, Colorado, this 17th day of January, 2007.

BY THE COURT:


___s/Craig B. Shaffer_____
United States Magistrate Judge